Ankhenaten Ra EL, Plaintiff,

v.

Michael CRAIN, et al., Defendants.

Case No. ED CV 05–00174 DDP (RZ).

United States District Court,
C.D. California.

June 4, 2008.

Ankhenaten Ra El, Riverside, CA, pro se.

Christopher D. Lockwood, Arias and Lockwood, John M. Porter, Lewis Brisbois Bisgaard and Smith LLP, San Bernardino, CA, for Defendants.

## ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

DEAN D. PREGERSON, District Judge.

The Court has reviewed the file in this matter, including the March 4, 2008 Report and Recommendation of United States Magistrate Judge. The Court has engaged in a *de novo* review of those portions of the Report to which Plaintiff has objected. The Court (1) accepts the Report and adopts its findings and recommendations, (2) grants in part the two motions to dismiss, as indicated in the Report; and (3) shall enter Judgment, under separate cover, in accordance with the Report and the January 18, 2007 Fourth Interim Report.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

RALPH ZAREFSKY, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California, the undersigned submits this Report and Recommendation to the Honorable Dean D. Pregerson, United States District Judge. The two groups of remaining defendants, the City Defendants and County Defendant Bob Doyle, have moved for summary judgment. As discussed below, the undersigned recommends that the Court grant Defendants' motions and dismiss the action.

## I.

### INTRODUCTION

Underlying this civil rights lawsuit is Plaintiff's arrest by Riverside city police on April 25, 2004 and his subsequent booking, brief jailing and partially successful prosecution. Plaintiff asserts 25 claims against various Riverside city officials (the "City Defendants") and one Riverside County defendant, sheriff Bob Doyle ("Doyle"), alleging various violations of his civil rights relating to the arrest and its aftermath.

### A. Parties

Plaintiff calls himself Ankhenaten Ra El, although the record indicates that at times he has been known as Daxius Donald Gregory. He sues several defendants, all in their official and individual capacities. Defendant have moved for summary judgment in the following two groups:

1. **The City Defendants,** namely several employees of the City of Riverside, including:

 a. police officers **Michael Crain, Juan Munoz, Michael Crawford,** **Robert Tipre, David Cunningham, John Burnette, Mark Reddick, Aaron Miller** and **Jeffrey Joseph** (collectively "The Crain Defendants"), all of whom Plaintiff sues based on their involvement in his arrest on April 25, 2004;

 b. police officers **Brian Smith** (sued as B. Smith) and **Felix Medina** (sued as Officer Medina), whom Plaintiff sues for their participation in Plaintiff's arrest on January 8, 2005;

 c. Chief of Police **Russ Leach,** sued for his alleged failure to supervise the aforementioned police defendants; and

 d. Deputy City Attorney **James Brown,** sued for allegedly interfering with and delaying a response to Plaintiff's state-law-based request for city records that Plaintiff wanted to prepare for his trial.

2. **Bob Doyle,** Sheriff of Riverside County, sued for jailing Plaintiff briefly in the wake of his arrest.

Plaintiff purports to sue ten "Doe" defendants, but he has neither served nor supplied the names of any of them. Also, Plaintiff's operative First Amended Complaint (1AC) continues to list claims that, and additional defendants whom, the Court previously dismissed. Accordingly, the undersigned omits discussion, where reasonably possible, of the Does and the previously-dismissed claims and Defendants and recommends that the Court dismiss the Does from the action.

### B. Claims

Plaintiff enumerates the following 25 claims, all based exclusively on federal law (although some make reference to state law, such as the California Public Records Act).[1] The first 24 claims, many of the

---

1. On pages 1 and 2 of his Statement Of Genuine Issues responding to Sheriff Doyle's mo-

factual allegations within which overlap substantially with one another, arise from Plaintiff's arrest on April 25, 2004 and its aftermath. The final claim asserts retaliatory harassment by means of an arrest occurring on January 8, 2005.

| Claim # | Basis and Targeted Defendants |
|---|---|
| 1 | False arrest ("racial profiling"), by the Crain Defendants. |
| 2 | False arrest ("neglect of duty to investigate" prior to arrest), by Crain. |
| 3 | False arrest and improper search of Plaintiff's vehicle, by the Crain Defendants. |
| 4 | Failure to provide Miranda warnings, by Crain. |
| 5 | Excessive force in arresting Plaintiff, by the Crain Defendants. |
| 6 | False arrest, by the Crain Defendants. |
| 7 | Excessive force ("assault and battery"), by the Crain Defendants at the arrest site. |
| 8 | Excessive force ("assault and battery"), by Munoz. |
| 9 | "Assault and battery" by Crain and Tipre at the police station, in that they held down Plaintiff's arm to permit a blood sample to be taken. |
| 10 | Unlawful search and seizure of Plaintiff's person, effects and blood sample, by the Crain Defendants. |
| 11 | Invasion of privacy. |
| 12 | Failure to prevent excessive force in the arrest, by Joseph. |
| 13 | Failure to prevent excessive force in the arrest, by other Crain Defendants. |
| 14 | Supervisory liability as to the arrest, by Joseph. |
| 15 | "Criminal conversion of Plaintiff's Blood," by Crain and Tipre |
| 16 | False arrest ("kidnapping"), by the Crain Defendants |
| 17 | False imprisonment based on Plaintiff's post-arrest jailing, by Crain and Sheriff Bob Doyle. Although Plaintiff complains about such jail conditions as being served "chemically-treated food," his principal complaint in Claim 17 appears to be that he was jailed prior to an in-person appearance before a magistrate. |
| 18 | (A claim solely against a now-dismissed defendant, Jonathan Stewart.) |
| 19 | Supervisory liability for the Crain Defendants' violations, by Police Chief Leach. |
| 20 | "Malicious prosecution and abuse of process," by numerous Defendants. Among other subclaims, this claim includes James Brown's alleged failure to provide Plaintiff, in a timely manner, with documents he requested pursuant to a state public records law. |
| 21 | Criminal conversion of Plaintiff's (father's) car based on its post-arrest impoundment, by Crain and Joseph. |
| 22 | "Mayhem," essentially a restatement of Plaintiff's other claims of excessive force during and immediately after his arrest. |
| 23 | Tampering with evidence (thereby depriving Plaintiff of a fair criminal trial), i.e., violation of Due Process, by Crain and Munoz. |
| 24 | Conspiracy to commit most of the foregoing alleged violations, by most of the Defendants. |
| 25 | "Retaliatory prosecution" consisting of Plaintiff's January 8, 2005 arrest, by Smith and Medina. |

Plaintiff seeks millions of dollars in compensatory and punitive damages.

### C. Defendants' Arguments For Summary Judgment

The City Defendants and Defendant Doyle present many of the same arguments for summary judgment. Primarily they assert that the undisputed facts entitle them to summary judgment on all of Plaintiff's claims except claims of excessive force during his arrest. They also assert that the excessive force claims are barred by the doctrine of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), because a jury convicted Plaintiff of resisting the very arrest during which the excessive force allegedly was used. (Further, Defendants assert that *most* of Plaintiff's claims are barred by *Heck,* but the undersigned prefers to limit reliance on *Heck* to those claims as to which a triable factual issue otherwise would exist.)

tion, Plaintiff makes clear that he asserts no *state*-law-based claims. "Plaintiff has alleged violations of *federal* law," he explains in response to a defense assertion that he failed to exhaust state administrative tort remedies, "and therefore is not required to comply with any state requirement" of such pre-litigation exhaustion. (Emphasis added.)

## II.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial responsibility of showing there is no genuine issue for trial, before the nonmoving party must introduce evidence. But the moving party is not initially required to *introduce evidence* negating an element on which the non-moving party will bear the burden of proof at trial (although the moving party may, and often does, do so). Rather, the moving party need only point out to the Court that, on at least one such element, no evidence supports the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnett v. Centoni,* 31 F.3d 813, 815 (9th Cir.1994).

In some of their arguments here, however, the defendants seek summary judgment on an issue as to which *they,* not Plaintiff, would bear the burden of persuasion at trial, namely qualified immunity. In such cases, their initial showing must be sufficient for the Court to hold that no reasonable trier of fact could find other than for the moving party. *See Southern Calif. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir.2003); *see generally* 3 WILLIAM A. SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, CALIFORNIA PRACTICE GUIDE: FEDERAL CIV. PROC. BEFORE TRIAL (2007) ¶¶ 14:124–126.1, 14:140–141.

Once the moving party meets its initial burden, the nonmoving party may not rest upon the mere allegations or denials of his pleading but rather must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This requirement applies not only to summary judgment motions in general, but also to such motions asserting the defense of immunity. *See Butler v. San Diego Dist. Attorney's Office,* 370 F.3d 956, 961–63 (9th Cir.2004) (expressly repudiating portions of certain other Ninth Circuit cases suggesting that, in deciding defendant's immunity-based summary judgment motion, district court should "assum[e] the truth of the factual allegations contained in plaintiffs' complaint without regard to whether those allegations had evidentiary support in the record") (case involving qualified immunity). "Where disputed facts exist, however," courts "can determine whether ... immunity [is] appropriate by assuming that the version of the material facts asserted by the non-moving party is correct," *if* competent evidence supports that version. *See KRL v. Moore,* 384 F.3d 1105, 1110 (9th Cir.2004) (case involving qualified immunity).

Nevertheless, any inferences drawn from the evidence presented will be viewed in a light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. *Pro se* pleadings must be liberally construed, moreover, because the "court recognizes that it has a duty to ensure that *pro se* litigants do not lose their right to a hearing on the merits due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988).

## III.

## FACTS [2]

Every claim in this action springs either

---

**2.** This section sets forth uncontroverted facts. It includes (1) several factual matters asserted by Defendants that Plaintiff purports to dispute but without a sound basis for doing so,

directly or indirectly from Plaintiff's arrest in a Riverside, California, park shortly after midnight on April 25, 2004.

### A. The April 25, 2004 Arrest

#### 1. Initial contact and investigation

At 12:26 a.m. on April 25, 2004, Riverside police officer Michael Crain was on routine patrol when he saw several vehicles parked in Bordwell Park's parking lot. Because Bordwell had been closed since thirty minutes after sundown, *see* Riverside Municipal Code § 9.08.110(A) (copy attached as Ex. A to Raskin Decl.), and because the park was known to Crain to have a reputation for illicit drug and gang activity, Crain decided to investigate the vehicles. *See* Crain Decl. at 1–2. Crain parked behind the vehicle that soon proved to have Plaintiff inside, although Crain was not then able to see whether the car was occupied. Crain approached on foot and, upon noticing Plaintiff apparently asleep in the car, requested routine backup. Crain awakened Plaintiff and asked what Plaintiff was doing in the park. Plaintiff answered that he was waiting to meet his roommate to discuss their plans for the day ahead. *Id.* at 2–3. Because Plaintiff also said that he lived "right down the street" from the park, Crain asked Plaintiff why he did not wait for his roommate at home instead. Plaintiff's response on the resulting transcript was inaudible. Pl.'s Ex. 2 (transcript of Crain conversation with Plaintiff) at 1–2.

#### 2. Crain suspects Plaintiff of being intoxicated with a controlled substance

Crain had trained to notice common symptoms of controlled-substance intoxication and had made numerous drug-related arrests. In his experience, common symptoms included eyelid tremors, agita-

tion, rapid pulse, and pupils that are either dilated, fixed or slow to react to light. Crain Decl. at 1. Crain observed Plaintiff to have fixed pupils and eyelid tremors and thus asked Plaintiff when he (Plaintiff) last used drugs. Plaintiff first responded, "I can't even remember." Immediately thereafter, Plaintiff said, "I'm not into dope, bro." *See* Pl.'s Ex. 2 (transcript of audiotape made by Crain during encounter, later played for jury in Plaintiff's criminal trial) at 2; Crain Decl. at 3. This response, delivered in a manner that "seemed rapid to me," *id.*, coupled with Plaintiff's physical symptoms, prompted Crain to ask Plaintiff repeatedly to step out of the vehicle to permit further evaluation for possible drug use, including a field sobriety test. Plaintiff repeatedly refused, threatening at one point, "First of all, I want to sue you for all you have," and soon began reaching around under his seat. *Id.* at 3–4; Pl.'s Ex. 2 (transcript) at 5; *see also id.* at 6 ("I'm going to sue you, officer, so I'm going to take you for all you . . . .") (ellipsis in original).

#### 3. Crain arrests Plaintiff after a lengthy struggle requiring backup

A material factual dispute does exist about some of what happened next, as the City Defendants concede. Stated briefly, Defendants present evidence that Plaintiff unlawfully resisted proper efforts to restrain and arrest him. Plaintiff, however, presents his own testimony that he struggled against excessive uses of force by the arresting officers.

##### a. Defendants' version of events

Given Plaintiff's repeated refusals and rummaging under his seat, Crain's training and experience led him to conclude that it would be safest to remove Plaintiff from

---

and (2) some factual matters that *are* disputed based on competent evidence, in which instances the version of events recited is that of

Plaintiff, as the non-moving party. *See KRL v. Moore, supra,* 384 F.3d at 1110.

the vehicle, before Plaintiff had the opportunity to arm or barricade himself or to destroy evidence. Accordingly, Crain placed his hand on Plaintiff's elbow and repeated his request that Plaintiff exit the vehicle. Plaintiff rendered his body rigid and pulled himself away from Crain. With effort, Crain finally extracted Plaintiff from the vehicle in a standing position. Crain Decl. at 4.

The struggle did not end there. Crain attempted to handcuff Plaintiff (presumably with Plaintiff's hands positioned behind his back), but Plaintiff physically resisted this repeatedly by turning his body around towards Crain. Crain feared that Plaintiff might attempt to punch or head-butt him and thus used a "bar arm takedown" to wrestle Plaintiff to the grass near the car. Plaintiff continued to resist by attempting to twist around to face Crain, among other things. *Id.* at 4–5. A number of Crain's fellow officers, including Munoz and Burnette, arrived in response to Crain's earlier call for backup. Munoz assisted Crain in his ongoing physical struggles with Plaintiff, permitting Plaintiff to be handcuffed at last. Munoz felt Plaintiff kick him during this part of the arrest. Munoz Decl. at 1.

### b. Plaintiff's version of events

Plaintiff does not dispute that he and some of the Crain Defendants struggled before he was arrested. He states, however, that he was subjected to excessive force, including the arresting officers' application of their body weight atop him, "chokeholds, grappling [and] stepping on my head and body to assault me." He also asserts that several of the Crain Defendants, not just Crain and Munoz, participated in wrongful use of force against me. *See* Pl.'s Amd. SGI (Re City's Motion) 17–20.

### 4. Immediate aftermath of the arrest

Before the officers placed Plaintiff in a patrol car for transport to the police station, Munoz searched Plaintiff's person while Crain searched Plaintiff's car. *Id.* at 2; Crain Decl. at 5. Crain found a bottle labeled as codeine-containing prescription medicine between the front seats. The prescription bore the name of Nancy Gregory, Plaintiff's mother. The officers contacted a towing company to remove Plaintiff's father's car to an impound yard and performed a routine inventory search. *Id.* at 5.

A post-arrest search of the other nearby cars in Bordwell Park revealed them to be unoccupied. *See* Munoz Decl. at 2.

At the Riverside police station, Plaintiff was told that he would be required to provide a blood sample to be tested for evidence of controlled-substance use. Plaintiff refused, so Crain and Tipre held Plaintiff's arm down against a desk while a nurse drew the sample. Crain Decl. at 5–6.

Plaintiff thereafter was booked into jail, a facility run by the county, not the city. *Id.* at 6. Part of the booking paperwork was a form "Declaration And Determination (Probable Cause For Warrantless Arrest)," in which Crain set out for a judge's review—and affirmed under penalty of perjury—his account of the events occurring in the park and the basis for Plaintiff's arrest. *See* Ex. 185 to Crain Decl. Later, at 10:30 a.m. on the morning of the arrest, a magistrate reviewed that document and countersigned it to indicate that, "On the basis of the foregoing Declaration, I hereby determine that there is probable cause to believe this arrestee has committed a crime." *Id.*

Plaintiff was in jail for less than one full day. *See* City Defs.' Ex. C at 1 (case report reflecting that Plaintiff served one day in jail prior to trial), during which time he "felt the continual threat of potential violence" from other jail inmates, "was denied fresh air and adequate natural light-

ing," and "was fed chemically-treated food," all causing Plaintiff "mental distress," 1AC at ¶¶ 106–12, although Plaintiff alleges no physical injuries caused by his jailing.

### 5. Criminal charges and their outcome

The Riverside County District Attorney filed a criminal complaint charging Plaintiff with the following four offenses:

1. Possession of a controlled substance (CAL. HEALTH & SAFETY CODE § 11377(a));
2. Battery on a peace officer (CAL.PENAL CODE § 243(b));
3. Interfering with, delaying or resisting a peace officer (CAL.PENAL CODE § 148(a)(1)); and
4. Being under the influence of a controlled substance (CAL. HEALTH & SAFETY CODE § 11550(a)).

#### a. Count 1 (drug possession) dismissed at preliminary hearing

The trial court dismissed the drug-possession count during the preliminary hearing for lack of evidence. (Specifically, the court saw neither (1) evidence that the "codeine"-labeled bottle's contents actually included codeine or any other controlled substance nor (2) proof that Plaintiff was even aware that the bottle was in the car, which belonged to his father, as would be required to show Plaintiff constructively possessed the bottle.) *See* Prelim. Hrg. Transcript (Ex. B to Raskin Decl.) at 126:2–14.

#### b. Count 4 (drug intoxication) dismissed prior to trial

The prosecution successfully moved to dismiss the drug-intoxication charge prior to trial because Plaintiff's blood test showed he had recently used marijuana, but only marijuana, *i.e.*, no drugs restricted by CAL. HEALTH & SAFETY CODE § 11550's definition of a "controlled substance." Ex. C to Raskin Decl. at 196, 198; Ex. D to Raskin Decl. at 201.

#### c. Convicted of interference but acquitted of battery on officer

Plaintiff went to trial on Counts 2 and 3, for interfering with the arresting officers and for battery on Munoz, respectively. On February 4, 2005, a Riverside County Superior Court jury found him guilty of the former but not guilty of the latter, more serious charge. Exs. B & C to Porter Decl. Plaintiff received a sentence of 180 days in jail, with one day of credit for time served. *See* City Defs.' Ex. C (Case Report printout) at 1.

#### d. Unsuccessful appeal and writ petitions

Plaintiff appealed, but the Appellate Division of the Superior Court affirmed with a written opinion on June 6, 2006. Exs. B, C, D to Porter Decl. Plaintiff filed a timely application with the Appellate Division to certify the transfer of the matter to the California Court of Appeal, but the Appellate Division denied the application. Exs. E, F to Porter Decl.; *see* former CAL. R. CT., Rule 63(c). Plaintiff then had eight days to petition the Court of Appeal itself for such a transfer, *see* former CAL. R. CT., Rules 63(c), 64(b)(2) & 107(a), but Plaintiff failed to take his next step in time. On July 14, 2006, Plaintiff filed a petition directly in the Court of Appeal, asking the intermediate appellate court to take up his appeal. That court dismissed his petition on July 31, 2006 as untimely, explaining that, under the state's law and court rules, Plaintiff only had until July 3, 2006 to file and serve his transfer petition, and the missed transfer deadline was a jurisdictional, not discretionary, bar. Exs. G, H to Porter Decl. Finally, Plaintiff petitioned the California Supreme Court for a writ commanding the intermediate appellate

court to accept the case. The state supreme court denied his petition on August 23, 2006. Ex. I to Porter Decl.

### 6. Plaintiff's state-law-based document request, and Brown's response

Prior to his trial, Plaintiff submitted a California Public Records Act request to the City of Riverside for various documents. Among other things, Plaintiff sought materials relating to the Police Review Commission's internal investigation into the April 2004 arrest, an investigation undertaken in response to Plaintiff's administrative complaints of excessive force and racially-motivated false arrest. *See* 1AC ¶¶ 141–42. Plaintiff ultimately received the requested documents, except for those withheld as privileged, but he complains that his trial was rendered unfair because Defendant Brown supplied the documents later than Plaintiff wished, after his trial had ended. *See* Pl.'s SGI (Re City Motion) ¶ 37.

### 7. The January 8, 2005 Arrest

About three months before Plaintiff's trial concluded, on January 8, 2005, two different Riverside police officers, Smith and Medina, arrested him. Smith stopped a vehicle, in which Plaintiff was one of two additional occupants, for making an illegal left turn. Smith Decl. at 1, 3. In interacting with the driver, Smith smelled what he recognized from experience to be marijuana smoke. Smith also observed Plaintiff, seated in the rear of the vehicle, making kicking motions with his feet and reaching under the front passenger's seat. Smith was concerned for his safety, in that Plaintiff might be reaching for a weapon, and came around to Plaintiff's side of the vehicle. Smith noticed a kind of pipe commonly used to smoke marijuana hanging out of Plaintiff's shoe. The officers' resulting investigation turned up a container of marijuana under the front seat, prompting them to arrest Plaintiff for possession.

Smith Decl. at 1–3. Only thereafter did Smith and Medina first become aware that the person arrested was involved in a legal battle relating to his April 2004 arrest. Smith Decl. at 3; Medina Decl. at 1.

## IV.

## QUALIFIED IMMUNITY

Mindful of higher tribunals' counsel that "qualified immunity questions should be resolved at the earliest possible stage of a litigation," *see Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *accord, Cunningham v. City of Wenatchee*, 345 F.3d 802, 808 (9th Cir.2003), the Court will consider, in discussing most of Plaintiff's claims in the following section, the Defendants' assertion that they enjoy qualified immunity.

Government officials are entitled to immunity if "their conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. 2727; *Cunningham, supra,* 345 F.3d at 810. The immunity thus shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The first of two analytical steps for the Court is to ask, "do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional violation is shown—based, in the summary judgment context, on whether there are genuine issues of material fact in dispute— then the immunity applies, and the Court's inquiry ends then and there. *See id.* If, however, the well-pleaded facts in the complaint show the violation of a constitutional right, then the Court must ask the second question, namely "whether the right is

clearly established." *Id.* A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

## V.

## DISCUSSION

### A. Claim 1: Racial Profiling (Equal Protection)

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). It is not enough to show mere differential treatment. A party must allege and prove the presence of an unlawful intent to discriminate against him for an invalid reason. *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Heightened court scrutiny may apply where a State's acts discriminate against a "suspect class" of persons or infringe upon a fundamental right. *See Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Most other classifications, however, need only be rationally related to a legitimate government purpose to withstand an equal protection challenge. *See City of Cleburne,* 473 U.S. at 476, 105 S.Ct. 3249; *Robinson v. Marshall,* 66 F.3d 249, 251 (9th Cir.1995).

■ Here, the City Defendants have pointed to an absence of evidence supporting Plaintiff's assertions that, in approaching and ultimately arresting him, some of the City Defendants "racially profiled" him. In response, Plaintiff fails to carry his burden of showing evidence to support a factual dispute requiring a trial. He cites a page from a document purporting to be a study suggesting that, statistically speaking, Riverside police were more likely to conduct traffic stops of motorists who were black than of other motorists. But this is far afield from being evidence that Crain and his colleagues intentionally discriminated against Plaintiff because of Plaintiff's race. The Court should grant summary adjudication as to Claim 1.

### B. Claim 2: "Neglect of Duty to Investigate" (False Arrest)

Claim 2 is difficult to understand and categorize. Generally stated, it is one of several claims asserting, each in a slightly different way, that Plaintiff should not have been arrested in the first place. More specifically, Plaintiff complains in Claim 2 that Crain did not do various things that Plaintiff supposes Crain had a duty to do before investigating Plaintiff further or arresting him. These purported duties include (1) checking Plaintiff's driver's license, (2) asking Plaintiff to put his hands on the steering wheel, (3) radioing for assistance (which Crain did do) and (4) radioing specifically for another Riverside officer named by Plaintiff. Plaintiff cites no legal authority creating any such duties. The Court therefore analyzes Claim 2 as asserting a false arrest, *i.e.,* an improper seizure in violation of the Fourth Amendment, for Plaintiff fails to state a claim for anything else.

■ Plaintiff was subjected to what is typically termed a "stop," during which time Crain questioned him and asked him to step out the car, before Plaintiff was arrested. A "stop" requires less justification than does an arrest. Specifically, "[p]olice may detain an individual for the purpose of an investigation of criminal activity if the officers have reasonable and articulable suspicion that the suspect is engaging in criminal activity." *United States v. $109,179,* 228 F.3d 1080, 1084 (9th

Cir.2000). Here, the undisputed facts indicate that Crain saw a number of parked cars, one of which later turned out to have Plaintiff inside, in Bordwell Park long after the park was closed. Crain was certainly within his rights to approach the cars to determine whether they were occupied, for any occupants at that hour were committing an offense under the municipal code. Crain discovered the sleeping Plaintiff in one of the cars and, after awakening him and conversing with him, observed some physical symptoms of recent controlled substance use. Plaintiff also provided a possibly inconsistent response to Crain's question about Plaintiff's recent drug use. Bordwell Park, moreover, was known to Crain for illicit drug and gang activity. Crain's "stop" and questioning of Plaintiff did not violate Plaintiff's Fourth Amendment rights.

An arrest, without warrant, generally requires more than "reasonable suspicion"; it requires "probable cause." Probable cause exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Courts look to "the totality of the circumstances known to the arresting officers" in analyzing probable cause, *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.1986), which is measured objectively, not subjectively. *Lopez*, 482 F.3d at 1072. Here, after Plaintiff (1) displayed what Crain recognized as physical symptoms of intoxication with methamphetamine or another controlled substance; and (2) supplied evasive and possibly contradictory responses to Crain's questions about drug use, Crain either had probable cause to arrest Plaintiff for drug intoxication or, at worst, had a reasonable but mistaken belief that probable cause existed. No factual matter exists to be tried on Claim 2, and the Court should grant summary judgment as to that claim.

### C. Claim 3: False Arrest and Improper Search of Vehicle

Many of Plaintiff's claims overlap somewhat. Claim 3 includes many of the same false-arrest allegations rejected immediately above and, to that extent, merits the same fate. Claim 3 also includes a sub-claim that the Crain Defendants's post-arrest search of Plaintiff's father's car was improper in violation of the Fourth Amendment. But because the arrest itself was not improper, the consequent search of the car Plaintiff was occupying also was not improper. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *but see* Order Granting Certiorari in *Arizona v. Gant*, — U.S. —, 128 S.Ct. 1443, 170 L.Ed.2d 274 (2008) (stating question presented as, "Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?"). (Although it does not appear that Plaintiff complains here about the search of his *person* incident to his arrest, any such claim is plainly infirm, for such searches are constitutional. *See United States v. Hartz*, 458 F.3d 1011, 1019 (9th Cir.2006).) The Court should grant summary judgment as to Claim 3.

### D. Claim 4: Failure to Provide *Miranda* Warnings During Initial Discussion

Plaintiff bases Claim 4 on Crain's "failure" to read *Miranda* warnings much earlier in their interaction, during their initial

conversation at some point. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (Statements stemming from a custodial interrogation are inadmissible at trial unless the interviewee was first warned of his constitutional rights to remain silent, to have an attorney present during the interrogation and to have an attorney appointed at no cost to him if he is indigent. The authorities must also warn that any statements made may be used against the interviewee. *Dickerson v. United States*, 530 U.S. 428, 435–36, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000); *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602.) A failure to provide the familiar *Miranda* warnings is actionable only if the plaintiff's custodial-interrogation statements are used against him. *Chavez v. Martinez*, 538 U.S. 760, 772, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003).

█ The complaint does not specify just which statements by Plaintiff underlie this claim, other than that they were statements tape recorded by Officer Crain. Based on Plaintiff's Opposition brief and other portions of the record, however, it is plain that the statements that were admitted into evidence at Plaintiff's trial, and upon which Plaintiff bases this claim, were his remarks to Officer Crain in response to Crain's *initial questioning*, not to any questioning after Plaintiff had been handcuffed and arrested with the aid of Crain's backup officers. *See, e.g.*, Pl.'s Opp. at 15; Pl's Ex. 2 (transcript of Crain tape). Defendants assert that the use of such statements is not actionable because, during that initial questioning, Plaintiff was not yet arrested or otherwise "in custody," and therefore that *Miranda* warnings were not yet required. The undersigned agrees.

*Miranda*'s safeguards apply when law enforcement officials initiate questioning after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293; *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. "[T]he ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (*per curiam*). In turn, this "ultimate inquiry" depends upon (1) the circumstances surrounding the interrogation, and (2) whether a reasonable person in such circumstances would have felt at liberty to end the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). A person is not "in custody" for *Miranda* purposes simply because he is questioned at the police station or because he is a police suspect. *See Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (traffic stop); *Beheler*, 463 U.S. at 1125, 103 S.Ct. 3517.

Here, although Plaintiff's freedoms were not unrestrained, he was merely being initially questioned as "a police suspect," *id.*, who had neither been formally arrested—that event occurred later, after the struggle (or, arguably, during the struggle)—nor, under the circumstances, deprived of freedoms in a manner similar to those accompanying a formal arrest. Plaintiff's freedom to leave the area was somewhat contingent on his reaction to Crain's initial questions, for those reactions could either dispel or confirm the initial suspicions of the officer. But by Plaintiff's proposed standard, *Miranda* warnings would be required during even the briefest of police stops, which stops then would be "arrests" or the functional equivalent. The Supreme Court rejected such an approach in *Berkemer*. *See* 468 U.S. at 439–40, 104 S.Ct. 3138. No material dispute exists to be tried on this claim.

### E. Claims 5, 7 and 8: Excessive Force

· Defendants concede that a material factual dispute exists as to Plaintiff's three excessive force claims. They assert, however, that all of these claims are barred by the doctrine of *Heck v. Humphrey,* because a jury convicted Plaintiff of resisting arrest (and that conviction still stands). *Heck* held that a prisoner cannot bring a federal civil rights action if granting the requested relief necessarily would imply the invalidity of the prisoner's conviction, unless he can show that the underlying conviction has been reversed, expunged or set aside. In creating this favorable-termination rule, the Court relied on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486, 114 S.Ct. 2364. Defendants argue that *Heck* bars Plaintiff's claims alleging the use of excessive force during his arrest, because granting Plaintiff relief necessarily would imply that his conviction for resisting that arrest was itself invalid. This Court agrees, although the question is closer than Defendants appear to believe, for it includes a complication that neither party briefed, discussed in subsection 2 below.

### 1. *Heck's* application to excessive force claims

■ *Heck* generally bars excessive-force claims by a plaintiff convicted by a jury of resisting arrest, unless the defendants allegedly used excessive force before or after the period when the plaintiff was "resisting." *Smith v. City of Hemet,* 394 F.3d 689, 695–97, 698–99 (9th Cir.2005) (*en banc* ); *see* CAL.PENAL CODE § 148 (interfering with or resisting peace officer); *People v. Simons,* 42 Cal.App.4th 1100, 1109, 50 Cal.Rptr.2d 351 (1996) (defendant cannot be convicted under § 148 "unless the officer was acting unlawfully *at the time* ") (emphasis added). Here, Plaintiff's conviction for resisting arrest was based on an extensive series of events. As the prosecution argued to the jury, Plaintiff's unlawful resistance of the Crain Defendants started with Plaintiff's refusal to comply with Crain's many directives to exit the vehicle, and continued throughout his tussle with Crain and, soon thereafter, with one or more other officers. Raskin Decl. Ex. E at 660 at 16–17 (closing argument). All of Plaintiff's allegations of excessive force are based solely on these initial physical struggles to remove him from the car, to handcuff him and otherwise to acquire enough control over him to allow him to be seated in a patrol car. *Heck* appears to bar his claims.

### 2. *Spencer's* limits on *Heck* for no-longer-in-custody plaintiffs

A complication, not briefed by the parties, arises here because Plaintiff already has completed the 180–day sentence for the underlying conviction. *See* City Defs.' Ex. C (Case Report printout) at 1. In some exceptional situations, *Heck* may not bar a non-custodial plaintiff—one to whom habeas corpus is not available because he is no longer "in custody" as required, *see* 28 U.S.C. § 2254—from proceeding with a civil-rights action that, if successful, would imply the invalidity of an adjudicated offense. Five Supreme Court Justices in *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), believed that a "convict given a fine alone, however onerous, or sentenced to a term too short to permit even expeditious litigation without continuances before expiration of the sentence," should not be ineligible for § 1983 relief, because his circumstances rendered impossible any successful challenge to his conviction or parole revocation although this five-Justice view does not have the status of a *holding. See* 523 U.S. at 19–21 & n. *, 118 S.Ct. 978 (Souter, J., joined by O'Connor, Ginsburg & Breyer, JJ., concur-

ring with four-Justice plurality); *id.* at 22–25, 118 S.Ct. 978 (Stevens, J., dissenting) (stating that prisoner's right to seek § 1983 relief, notwithstanding extant conviction, is "perfectly clear" where habeas remedy was unavailable). The Ninth Circuit has interpreted *Spencer* as creating a limited exception to *Heck,* permitting some litigants who no longer may pursue habeas relief to bring collateral civil rights claims. *See, e.g., Nonnette v. Small,* 316 F.3d 872, 877–78 & nn. 6–7 (9th Cir.2002).

But this exception is narrow, for it is limited to plaintiffs (1) who are "former prisoners challenging loss of good-time credits, revocation of parole or similar matters," *id.* at 878 n. 7, not collaterally challenging underlying criminal *convictions,* and (2) who diligently pursued "expeditious litigation" to challenge those punishments to the extent possible. *See Guerrero v. Gates,* 442 F.3d 697, 704–05 (9th Cir.2006) (comparing *Nonnette,* wherein the plaintiff diligently challenged administrative revocation of good-time credits, with *Cunningham v. Gates,* 312 F.3d 1148 (9th Cir.2002), wherein the plaintiff failed diligently to challenge an underlying criminal conviction).

Plaintiff satisfies neither of these tests for an exemption from *Heck.* First, his current action would imply the invalidity of a criminal conviction, not a mere parole revocation or prison administrative decision. Second, although Plaintiff vigorously challenged that conviction in the state courts, he did not do so entirely "expeditious[ly]": he missed a critical deadline for filing in the intermediate appellate court, resulting in a procedural default. For the foregoing reasons, *Heck* bars Plaintiff's claims of excessive force, and Defendants are entitled to summary judgment on those claims.

**F. Claim 6: False Arrest**

Claim 6 is a rehash of Plaintiff's prior assertions that his arrest by the Crain Defendants violated his Fourth Amendment rights. It should be dismissed for the same reasons noted in the foregoing discussion of Claim 2.

**G. Claim 9: "Assault and Battery" for Restraint of Plaintiff's Arm for Purposes of Blood Draw**

Implicit in Claim 9, alleging the unlawful use of force by Crain and Tipre based on their restraint of Plaintiff's arm during a blood draw to which Plaintiff did not consent, is that the Defendants had no legal right to draw his blood in the first place. (Plaintiff does not allege that the officers "battered" him in the more conventional sense or that they otherwise used more force than reasonably necessary to restrain his arm and draw blood against his will. *See* 1AC ¶¶ 63–64.) But they did have that right. The Supreme Court held over 40 years ago in *Schmerber v. California* that warrantless blood tests are constitutional for persons validly arrested on intoxication charges, in part because the delay required to obtain a warrant often will result in dissipation of the evidence contained in the arrestee's blood. 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Plaintiff's arrest was valid, as discussed above. He refused to provide a blood sample voluntarily. *Schmerber* permitted it to be taken against his wishes. The Court should grant Defendants summary adjudication on Claim 9.

**H. Claim 10: Unlawful Search and Seizure of Blood, Father's Car, Possessions of Father and Mother Within Car**

Claim 10 consists of several subclaims. First, Plaintiff asserts that the drawing and analysis of his blood violated his

Fourth Amendment rights. That claim is precluded by *Schmerber*, as discussed immediately above. (Plaintiff alleges that some of the Defendants also tainted his blood sample, but he provides no evidence for this allegation. It seems counterintuitive, moreover, that a sworn peace officer would risk committing such a gravely criminal fraud yet, in doing so, taint the blood sample *only* with marijuana evidence, rather than with methamphetamine or another chemical satisfying the definition of a "controlled substance.")

Second, Plaintiff claims that the towing and brief garaging of his father's car were improper. Although this claim appears clearly infirm, *see* CAL. VEH.CODE § 22651(h)(1) (authorizing towing of vehicle "[w]hen an officer arrests a person driving or in control of a vehicle" and takes the person into custody); *South Dakota v. Opperman*, 428 U.S. 364, 369–70, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (upholding, as constitutional, state's post-arrest vehicle towing, impounding and inventorying procedures), the Court technically should decline to decide the merits of this subclaim for lack of subject matter jurisdiction. It is apparent from the 1AC and Plaintiff's other admissions that the car belongs to Plaintiff's father, not Plaintiff himself. Plaintiff neither pleads nor proves that he holds an assignment from his father, the owner of the car, of any claims relating to the father's car's impoundment. Plaintiff thus has no standing to press this particular sort of subclaim.

Third, Plaintiff asserts that the search of the car was improper. Because Plaintiff's arrest was not invalid, however, a search of the car in which he had just been sitting, made incident to that arrest, was lawful. *New York v. Belton, supra.*

Fourth, although Plaintiff generally complains about "his" personal possessions being taken along with the car, the only two possessions specified do not belong to him, by his own admission: "my mother's prescription medication" and "a computerized memo minder that belonged to my father." As with the second subclaim, the Court lacks subject matter jurisdiction over this fourth subclaim because Plaintiff lacks standing to assert it. In sum, the Court should grant summary judgment as to the first and third subclaims, but it should dismiss the second and fourth subclaims for want of jurisdiction.

## I. Claim 11: "Invasion of Privacy"

Claim 11 rehashes Plaintiff's claims of false arrest, improper taking of his blood sample and use of excessive force during his arrest. The Court should grant summary judgment as to this claim for the reasons discussed above.

## J. Claims 12 and 14: Sgt. Joseph's "Failure to Prevent" Above Violations

In Claim 12, Plaintiff alleges that Defendant Joseph, a police sergeant, failed to prevent the wrongs alleged in the foregoing arrest-related claims against the Crain Defendants. Claim 14 similarly asserts "supervisory liability" by Joseph for those claims. Even if Joseph could be liable on such failure-to-prevent or supervisory-liability theories on different facts, Plaintiff cannot prevail on the claims in this instance because, as discussed above, the underlying claims against the Crain Defendants are themselves infirm.

## K. Claim 13: Other Arrest–Site Officers' "Failure to Intercede"

Claim 13 is similar to Claims 12 and 14 and merits the same fate. Plaintiff faults those Crain Defendants who were present but who did not physically participate in his arrest, because such bystander defendants "fail[ed] to intercede" to prevent the misdeeds of the officers who *did* physically

arrest him. But those underlying arrest-related claims are subject to summary adjudication, and therefore this claim too cannot succeed.

## L. Claim 15: "Criminal Conversion of Plaintiff's Blood"

Parts of Claim 15 are a rehash of Plaintiff's assertions, discussed above, that Defendants violated his constitutional rights by taking a blood sample against his will. In other parts, Plaintiff alleges that Defendants failed to return the remains of his blood sample even after Plaintiff obtained a Superior Court order compelling its return. In his opposition brief, Plaintiff concedes that the sample now has been returned to him. The matter appears to be moot. In any event, Plaintiff fails to show that a delay in returning a post-arrest blood sample constitutes a violation of any federal law, even if it may have violated a California state court's order or may constitute a California tort (although, as noted above, Plaintiff elsewhere makes clear that he bases all claims solely on federal law). No dispute exists to be tried as to Claim 15.

## M. Claim 16: "Kidnapping"

Plaintiff incorporates, in Claim 16, the allegations underlying his prior claims against the Crain Defendants—primarily but not exclusively false arrest and false imprisonment—and re-labels those ingredients as a claim for kidnapping. Although the Court construes that label as asserting another improper seizure under the Fourth Amendment, Plaintiff cannot prevail on this claim for the same reasons that he cannot prevail on the underlying claims.

## N. Claim 17: False Imprisonment

■ In Claim 17, Plaintiff asserts that Sheriff Doyle had no right to jail him after his arrest, at least not prior to Plaintiff's *in-person* appearance before a magistrate.

He is mistaken. The Ninth Circuit explained in *Jones v. City of Santa Monica* that a judicial determination of probable cause following a warrantless arrest "may be informal and non-adversarial[.]" 382 F.3d 1052, 1055 (9th Cir.2004). Specifically, the magistrate's determination may be made *outside of the arrestee's presence* and by means of an application made on a pre-printed form filled out with the arresting officer's sworn statement about the facts allegedly supporting probable cause. *Id.* at 1055–56. Such a judicial determination generally satisfies the Constitution if made within 48 hours of arrest. *County of Riverside v. McLaughlin,* 500 U.S. 44, 53–55, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Here, the magistrate's review and approval of Officer Crain's Declaration, accomplished within ten hours of Plaintiff's arrest, satisfied the pertinent constitutional tests.

Plaintiff includes complaints that, during his hours in jail, he experienced fear of violence from other inmates, a lack of sunlight and fresh air, and food that did not meet his standards. However, he points to no incidents of deliberate cruelty or any physical injury, and, as Defendant Doyle aptly puts it, "Deprivation of daylight and fresh air," at least to a degree, "is the essence of jail and prisons." Doyle Reply Br. at 2–3. Plaintiff thus fails to state a claim based on prison conditions. *See* 42 U.S.C. § 1997e(e) (prohibiting prisoner actions "for mental or emotional injury suffered while in custody without a prior showing of physical injury"); *Oliver v. Keller,* 289 F.3d 623, 627 (9th Cir.2002) (applying 42 U.S.C. § 1997e(e) to action by pretrial detainee) (requiring that challenged conditions of confinement cause physical harm that is more than *de minimis* ).

## O. Claim 18: A Claim Effectively Dismissed Earlier

Claim 18 targets only former defendant Jonathan Stewart, but Stewart has been

dismissed from the action with prejudice, effectively taking this claim with him. To the extent the pending motions target Claim 18, therefore, they are moot.

### P. Claim 19: Supervisory Liability of Police Chief Leach

In Claim 19, Plaintiff seeks to blame Police Chief Leach for Leach's subordinate officers' alleged wrongful acts and omissions in the above claims. Since Plaintiff cannot succeed on those claims, he cannot succeed on this claim.

### Q. Claim 20: "Malicious Prosecution and Abuse of Process"

■ As claim 20's two-part title suggests, it really contains two subclaims. First, Plaintiff asserts that Officers Crain, Munoz and Joseph, and Chief Leach, maliciously prosecuted him. (Plaintiff also targeted several employees of the County District Attorney's office, but all Defendants targeted in this claim other than the four city police officers already have been dismissed from the action.) The patrol officers, and by extension Chief Leach, whom Plaintiff sues for improper supervision of them, enjoy a rebuttable presumption of immunity because a criminal complaint was filed against Plaintiff after his arrest, and "it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause exist[ed] at that time." *Smiddy v. Varney,* 665 F.2d 261, 266 (9th Cir.1981). To rebut the presumption, Plaintiff must show that the officers either

pressured the prosecutor to act contrary to the prosecutor's best judgment or presented the prosecutor with incriminating evidence that the officers knew to be falsified. Plaintiff presents no evidence of such improper pressure or a knowing frame-up. The malicious-prosecution subclaim thus should be dismissed.

Second, Plaintiff targets Defendant James Brown, an Assistant City Attorney for Riverside (along with other defendants who already have been dismissed), for "abuse of process." Specifically, Plaintiff alleges that Brown deliberately delayed improperly in complying with a document request Plaintiff made pursuant to the California Public Records Act (CPRA) for use in Plaintiff's trial. *See generally* CAL. GOV. CODE §§ 6250 *et seq.* As a result of this delay, Plaintiff did not receive the documents until after his trial. The records Plaintiff sought related to an police review board's investigation of Plaintiff's administrative complaint of improper arrest and excessive force implicating Crain and other officers. But Plaintiff simply fails to state a claim for relief pursuant to a *federal* law,[3] even if he may show a violation of state law. (The City Defendants argue rather persuasively that even a CPRA violation did not occur because, first, the CPRA does not dictate when *production* of requested documents must occur, only when *notification* to the requesting party must occur.) Moreover, Plaintiff (1) does not dispute that Brown supplied all of the documents requested except those with-

---

**3.** Plaintiff attaches a First Amendment label to this subclaim, explaining that the delay in document delivery robbed him of his right to petition for redress of grievances. He also attaches a Fifth Amendment label—although, since the Defendants are not federal officers, he probably means the Fourteenth—arguing that the delay deprived him of property without due process. Finally, he asserts the Sixth Amendment, claiming that the delay in the documents deprived him of a fair trial. Plain-

tiff had an opportunity to present such arguments in his unsuccessful state-court appeal. Labeling does not somehow federalize a possible violation of a state law requiring prompt responses to requests for municipal records— particularly when the remedies for violating that very state law, the CPRA, include only "injunctive or declarative relief" or a "writ of mandate," but not *monetary* damages as Plaintiff seeks here. *See* CAL. GOV'T CODE § 6258.

held as privileged; (2) supplies no evidence that any delay by Brown was purposeful and done in bad faith, and (3) obviously was present at his arrest and thus "had firsthand knowledge of all the facts and circumstances surrounding his arrest." *Galazo v. City of Waterbury,* 303 F.Supp.2d 213, 219 (D.Conn.2004) (citation and internal quotation marks omitted) (rejecting § 1983 claim against police-department advisor based on advisor's failure to provide plaintiff with documents requested pursuant to Freedom Of Information Act, because such failure did not prevent plaintiff from seeking meaningful redress in court as to plaintiff's claims of false arrest and excessive force).

### R. Claim 21: "Criminal Conversion" by Towing Plaintiff's Father's Car

As with Plaintiff's previously-discussed conversion claim, Plaintiff lacks standing to assert this claim of conversion based on the routine impoundment of his father's car, because Plaintiff owned neither the car nor the "computerized memo device" therein that allegedly was lost incident to the impoundment.

### S. Claim 22: "Mayhem"

Claim 22, for "mayhem" by the Crain Defendants, is another rehash of Plaintiff's meritless claims of excessive force during his arrest. It should meet the same fate as they do.

### T. Claim 23: "Tampering and Altering Evidence"

Plaintiff alleges that Crain altered the audiotape of his pre-arrest discussion with Plaintiff. Plaintiff offers no admissible evidence of such tampering. Plaintiff similarly alleges that Munoz, whose audiotape of the incident was essentially blank, deliberately erased his tape or otherwise tampered with that tape. But Plaintiff offers no evidence of such tampering. In con-trast, both officers have testified that they believe their recorders inadvertently switched off during their vigorous struggles to arrest Plaintiff. Crain Decl. at 6–7; Munoz Decl. at 2–3. Plaintiff scoffs at their testimony but supplies no contrary evidence.

### U. Claim 24: Conspiracy

Plaintiff claims that Defendants' various wrongs were the result of a conspiracy. He fails to substantiate any of the underlying claims themselves, however, as discussed above. This claim too therefore merits summary adjudication.

### V. Claim 25: Retaliatory Arrest on January 8, 2005

Plaintiff claims that, "upon seeing and recognizing me as a litigant in this publicized case involving his co-officers and co-defendants at Bordwell Park, Defendant Smith" chose to arrest Plaintiff for possession of marijuana. 1AC ¶ 202. In other words, Plaintiff is alleging that Smith and his partner Medina treated Plaintiff worse than they would have treated an otherwise similarly-situated person whom they did *not* know to be embroiled in a legal battle against other Riverside officers.

Although the Ninth Circuit held in 2006 that a retaliatory arrest may be actionable even if supported by probable cause, *see Skoog v. County of Clackamas,* 469 F.3d 1221, 1235 (9th Cir.2006), this particular claim fails for two independent reasons. First and more fundamentally, Plaintiff has no admissible evidence to rebut both officers' testimony that they did not even know who Plaintiff was—in the sense of knowing that Plaintiff was involved in a legal battle relating to his April 2004 arrest—until after they had arrested him. Smith Decl. at 3; Medina Decl. at 1. It is self-evident that they therefore could not have been acting out of retaliatory malice.

Second, even if a triable factual issue existed as to Smith's and Medina's knowledge about Plaintiff, they would enjoy qualified immunity. *Skoog* itself held (a) that, *pre-Skoog,* it was not "clearly established" whether an arrest that not only was supported by probable cause *but also was made for retaliatory reasons* was actionable; and therefore (b) that the defendant officers in *Skoog,* who had probable cause for their arrest, deserved qualified immunity from the retaliation claim. Just so here. This arrest occurred in 2005, prior to *Skoog.* Probable cause plainly supported Smith's and Medina's arrest of Plaintiff, who does not validly dispute that Smith smelled marijuana smoke in the car; that Plaintiff was in the car's back seat; that Smith saw Plaintiff kicking with his feet and reaching under the front seat of the car; that Smith saw, sticking out of Plaintiff's shoe, a type of pipe commonly used for smoking marijuana; and that Smith then found a container of marijuana under the front seat of the car. This final claim merits summary adjudication.

## VI.

### RECOMMENDATION

For the reasons set out above, IT IS RECOMMENDED THAT the Court GRANT IN PART the motions by the two groups of Defendants for summary judgment, as discussed herein, and enter Judgment dismissing this action (a) for lack of subject-matter jurisdiction (due to Plaintiff's lack of standing) as to Claim 21 and to the second and fourth subclaims within Claim 10; and (b) with prejudice as to all other portions of the action.

DATE: March 4, 2008.